UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

TINA R. CONCEPCION,                                      :

                   Plaintiff,                          :                    15 Civ. 2156 (AJP)

           -against-                                :          **OPINION & ORDER**

CITY OF NEW YORK,                                        :

                 Defendant.                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Pro se plaintiff Tina Concepcion brings this action against her employer, the City of New York Department of Transportation, alleging that she was discriminated against on the basis of her race, gender, national origin, age, color, religion, and disability, and retaliated against for her complaints, in violation of Title VII, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the New York State Human Rights Law and the New York City Human Rights Law.  (Dkt. No. 26: 2d Am. Compl.)

        Presently before the Court is the City's summary judgment motion.  (Dkt. No. 40: Notice of Mot.)  The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 30.)  For the reasons set forth below, the City's summary judgment motion is <u>GRANTED</u> with respect to Concepcion's Title VII, ADA, ADEA and NYSHRL discrimination and retaliation claims, as well as Concepcion's ADA and NYSHRL failure-to-accommodate claims.  The Court declines to exercise supplemental jurisdiction over Concepcion's NYCHRL claims, which are dismissed without prejudice.

## FACTS

### Background

The evidence in the summary judgment record, construed in the light most favorable to Concepcion as the nonmoving party, is as follows:

Concepcion, born on January 10, 1967, was forty-eight years old at the time she commenced this action.  (Dkt. No. 26: 2d Am. Compl. ("SAC") at 3.)  Concepcion identifies as a "dark skinn[ed]" African-American female, and religiously identifies as a Jehovah's Witness.  (Dkt. No. 60-1: Concepcion Opp. Br. Exs.: Concepcion Dep. at 120.)  Concepcion claims that she is disabled in her back, neck, right hip, right leg, and right arm, and has carpal tunnel syndrome in her right wrist and trigger finger in her right hand.  (Id. at 120, 121, 123.)  Concepcion asserts that her back and neck disabilities limit her mobility and cause her pain.  (Id. at 121-22.)  Concepcion's disabilities were caused by a car accident in 2009 (id. at 126), and a slip and fall in 2012 (id. at 121).

Concepcion attended New York Technical College, but does not have a college degree.  (Id. at 140-41.)  Concepcion has been employed by the New York City Department of Transportation ("DOT") as a Procurement Analyst level I since 2008.  (Id. at 134, 137.)  Concepcion alleges that she has been denied a promotion, training, performance evaluations, the opportunity to work overtime hours, Family Medical Leave Act ("FMLA") time, a workers' compensation grant, and reasonable accommodation for her disabilities.  (SAC at 3; Concepcion Dep. at 154-55.)  Concepcion has never heard any disparaging comments about her race, ethnicity, gender, age, disability or religion at work.  (Id. at 154-55.)  Her only proof of discrimination is that she was not promoted or given training.  (Id. at 155.)

In June 2014, Concepcion filed an Equal Employment Opportunity ("EEO") complaint with DOT's internal EEO officer (Dkt. No. 41: City 56.1 Stmt. ¶ 58), and filed a

complaint with the Equal Employment Opportunity Commission ("EEOC") on November 4, 2014 (Dkt. No. 2: Compl. at 6-10).

### Facts Relevant to Concepcion's Reasonable Accommodation Claims

Concepcion's EEOC complaint identifies her disability as "limited mobility-back, walking, lifting." (Dkt. No. 2: Compl. Exs. at 9.) Concepcion's request for an ergonomic chair, keyboard, computer monitor, mouse, and adjustable keyboard tray to accommodate her disabilities were received by Abina Lee in the DOT EEO Office, and Urenia Rosa. (Dkt. No. 26-3: SAC Exs. at 16, 36-37.)[1] In 2014, Concepcion was provided with a mouse, keyboard, and keyboard tray and can perform her work using them, albeit with some discomfort. (Dkt. No. 56: Murrell Aff. Ex. A: Concepcion Dep. at 57, 60.) Concepcion was given an ergonomic chair in 2014, and another in 2015, but because the new chair arrived damaged it had to be re-ordered. (Id. at 61.) As of Concepcion's deposition on October 19, 2015, she claimed that the chair she was using at work did not provide proper neck support. (Id. at 61-62.) Concepcion further asserts that she has been denied a disability parking permit. (See, e.g., SAC at 3; Dkt. No. 60-6: Concepcion Opp. Br. Exs. at 26; Dkt. No. 60-7: Concepcion Opp. Br. Exs. at 13),

### Facts Relevant to Concepcion's Denial of Overtime Claim

Overtime hours are granted to DOT employees at their supervisors' discretion when a unit "has back-log work or when the amount of workload cannot be completed during the work hours, or as other needs arise." (Dkt. No. 56: Murell Aff. Ex. F: Carolan Aff. ¶ 9.) Concepcion's supervisor, Bahman Ghaffarsamar, has not requested overtime for Concepcion because her "current workload is not extensive enough to warrant overtime." (Id.) "Several other employees" supervised

---

[1]     References to SAC Exhibits are to the ECF system delineation of the several hundred pages of materials Concepcion attached to the SAC.

by Mr. Ghaffarsamar also have not been granted overtime.  (Id.)  Some DOT procurement analysts are paid at a higher rate than their listed annual pay basis, which might indicate that they are compensated for overtime hours.  (See, e.g., Dkt. No. 60-3: Concepcion Opp. Br. Exs. at 15-30.)

**Facts Relevant to Concepcion's Denial of Performance Evaluation Claim**

Concepcion has not received a performance evaluation since March 2013.  (Dkt. No. 56: Murrell Aff. Ex. F: Carolan Aff. ¶ 8; see also Dkt. No. 26: SAC at 3; Dkt. No. 60: Concepcion Opp. Br. at 5.)  DOT "has no policy that performance evaluations must be given on a regular basis," and most employees reporting to the DOT Assistant Commissioner/Agency Chief Contracting Officer ("ACCO") Nancy Carolan have not received more recent performance evaluations.  (Carolan Aff. ¶ 8.)

**Facts Relevant to Concepcion's Denial of Training Claim**

Training is offered to DOT employees based on their tasks.  (Dkt. No. 56: Murrell Aff. Ex. F: Carolan Aff. ¶ 7.)  ACCO Nancy Carolan reviews supervisor requests for employee training.  (Id.)  Upon hire, Concepcion was provided with the requisite training for her position, and has received all of the required agency/citywide training.  (Id.)  Concepcion does not need additional training to "adequately perform her work" (id.), but believes that the "certified buyers certificate" would help her career and is related to her job duties (Dkt. No. 60-1: Concepcion Opp. Br. Exs.: Concepcion Dep. at 143, 180-81).

**Facts Relevant to Concepcion's Failure to Promote Claim**

Concepcion has applied and interviewed for several Procurement Analyst positions. (Dkt. No. 56: Murrell Aff.  Ex. A: Concepcion Dep. at 78.)  In 2013, Concepcion interviewed with Susan Gabrielli for Procurement Analyst level II and III positions.  (Id. at 78.)  Andrew Cammock, Nicola Rahman and Ana Betancourt were hired to fill the positions for which Concepcion

interviewed. (Murrell Aff. Ex. F: Carolan Aff. ¶¶ 2-5.) Andrew Cammock and Nicola Rahman already were level III Procurement Analysts for other City agencies. (Id. ¶¶ 3-4.) When Ana Betancourt was hired, she was a Procurement Analyst I with the City Department of Human Resources Administration, but previously had served as a Procurement Analyst II for the Contract Office of the Administration for Children's Services. (Id. ¶ 5.) On April 28, 2015, Concepcion interviewed for a level III Procurement Analyst position in the DOT Bridges Unit. (Murrell Aff. Ex. E: Oliveto Aff. ¶ 3.) Seven candidates were interviewed for the role and Concepcion ranked sixth out of seven. (Id.) Employment offers were extended to the top two candidates, and when they declined, the DOT Bridges Unit decided to wait for a "list call" based on a civil service test previously given for the title. (Id. ¶¶ 3-5) Chassidi Miner, a Procurement Analyst for the City's Department of Education, responded to the list call, performed well in her interview and was hired. (Id. ¶ 5.)

Concepcion asserts that for at least one of the positions she did not receive, ACCO Nancy Carolan called the hiring agency and must have said "something negative" about her. (Dkt. No. 60-1: Concepcion Opp. Br. Exs.: Concepcion Dep. at 186-87.) Although Concepcion has never heard any insult or derogatory remark from anyone at DOT about any of her protected characteristics (id. at 154-55, 174), "people" used to tell her that ACCO Nancy Carolan did not like her (id. at 174). Concepcion suspects that Carolan's dislike is at least in part "revenge," because Concepcion's mother was a City employee who might previously have denied contracts Carolan attempted to register; but Concepcion also asserts that Carolan's actions are a sign of race-based discrimination, or a "personality" issue. (Id. at 175-76.)

Concepcion states that procurement analysts at all levels perform the same job function, and that years of experience qualify a procurement analyst for promotion. (Id. at 154.)

On June 25, 2014, Concepcion emailed Mayor de Blasio "regarding Procurement Analyst promotions," and DOT Director of Personnel Jean Frankowski replied to Concepcion stating that "there is no automatic maturation between levels in the Procurement Analyst title.  Levels 2 and 3 require more experience and entail more complex responsibilities.  The completion of the probation period as a Procurement Analyst Level 1 does not ensure either."  (Dkt. No. 26-1: SAC Exs. at 9.) Concepcion's union representative likewise informed her that there are no promotional exams for procurement analysts, rather any movement "from level to level . . . is at management's discretion." (Dkt. No. 60-3: Concepcion Opp. Br. Exs. at 31.)

### Facts Related to Concepcion's Retaliation Claim

On November 4, 2014, Concepcion filed a complaint with the EEOC.  (Dkt. No. 2: Compl. Ex. at 6-10.)  Concepcion's EEOC complaint alleges that she was discriminated against on the basis of her race, sex, age, disability, national origin, and color, and retaliated against.  (Id. at 8.)  Concepcion complained of the following discriminatory actions: DOT did not evaluate her performance or explain why it failed to promote from within, and paid her less than others doing the same work.  (Id.)  Concepcion felt that these actions were discriminatory because she applied and was interviewed for four positions, which DOT filled with three men and a woman from another agency.  (Id.)  Concepcion identified a man and two deceased women who she believes were treated better than she.  (Id.)  Concepcion's EEOC complaint identified her disability as "limited mobility," and noted that on February 14, 2004 she asked ACCO Nancy Carolan for a "special chair, special keyboard and mouse" to help her do her job.  (Id. at 9.)  Concepcion noted that her employer fulfilled her request, but "it took 2 months."  (Id.)  The EEOC closed its file on January 1, 2015, because it was "unable to conclude that the information obtained establishes violations of the statutes," and issued Concepcion a right to sue letter.  (Dkt. No. 26: SAC Ex. at 6.)

Concepcion asserts that various DOT disciplinary measures, DOT's difficulty in appropriately allocating her sick and medical time, DOT's failure to accommodate her disability, evaluate, promote or further train her, and the denial of her disability parking permit, among other things, are retaliatory.  (See, e.g., Dkt. No. 26-1: SAC Exs. at 23; Dkt. No. 26-2: SAC Exs. at 1, 10; Dkt. No. 56: Murrell Aff. Ex. G at 6-7: 12/29/14 N.Y.S. Div. of Human Rights Charge.) Concepcion asserts that the City's retaliation began in 2011, "really" started in 2012 when she complained about her worker's compensation, and continues presently as a response to her signing her 2013 evaluation "in protest," her June 2014 complaint with DOT's internal EEO officer,[2] and her EEOC complaint.  (Dkt. No. 60-1: Concepcion Dep. at 160-61.)

Between March 2009 and November 2014, Concepcion received a parking permit for people with disabilities from the NYC Department of Health and Mental Hygiene ("DOHMH"). Concepcion's application for a renewed parking permit was denied by DOHMH on July 30, 2014, because the agency found that Concepcion's medical documentation did not demonstrate that she had a "'permanent disability seriously impairing mobility.'" (Dkt. No. 26-8: SAC Exs. at 13.) Concepcion's subsequent parking permit appeals were denied on September 29, 2014 (id.) and December 10, 2014 (Dkt. No. 26-7: SAC Exs. at 52).

From 2013 to the present, Concepcion has been disciplined for various workplace infractions, and asserts that DOT's disciplinary measures are evidence of "bias retaliation."  (See, e.g., Dkt. No. 26-2: SAC Exs. at 1: 5/7/15 email.)  The infractions for which Concepcion has been disciplined include persistent lateness (Murrell Aff. Ex. F: Carolan Aff. Exs. at 51), speaking to her

---

[2]    Concepcion's June 2014 EEO complaint, filed with her "EEO officer at DOT" was not attached as an exhibit to her complaint, but it is referenced in her complaint (SAC at 3) and in a November 14, 2014 letter she wrote to the EEOC (Murrell Aff. Ex. G. at 8-9.)

supervisor in a "harsh and unprofessional" manner (id. at 46), failure to timely report an arrest (Murell Aff. Ex. H: Caraway Aff.  ¶¶ 3-5), and using her personal phone at work (Dkt. No. 26-1: SAC Exs. at 31).

Additionally, Concepcion repeatedly has been required to reset her password to access the DOT "FMS" computer program.  (Dkt. No. 26-1: SAC Exs. at 12-30.)  Concepcion asserts that interrupting her access to "FMS" is a form of retaliation and a means of reducing her work duties.  (Id. at 23.)  Concepcion states that the DOT time keeper's "constant" difficulty tracking Concepcion's FMLA and worker's compensation time is further "agency retaliation."  (See, e.g., Dkt No. 26-10: SAC Exs. at 12, 21.)

Finally, Concepcion asserts that as of December 31, 2015, all of her tasks have been taken away from her.  (Dkt. No. 60: Concepcion Opp. Br. at 4; Dkt. No. 60-1: Concepcion Dep. at 173-74.)

## ANALYSIS

### I.   LEGAL PRINCIPLES

#### A.   General Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Humphreys v. Cablevision Sys. Corp., 553 F. App'x 13, 14 (2d Cir. 2014); Connolly v. Calvanese, 515 F. App'x 62, 62 (2d Cir. 2013); Lang v. Ret. Living Publ'g Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Alzawahra v. Albany Med. Ctr., 546 F. App'x 53, 54 (2d Cir. 2013); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53; Dolan v. Cassella, 543 F. App'x 90, 90 (2d Cir. 2013).

To defeat a summary judgment motion, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)).  Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is genuinely disputed."  Fed. R. Civ. P. 56(c)(1); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (at summary judgment, "[t]he time has come . . . 'to put up or shut up'"), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[3/]

---

[3/]   See also, e.g., Crown Castle NG E. Inc. v. Town of Greenburgh, N.Y., 552 F. App'x 47, 49 (2d Cir. 2014); Alzawahra v. Albany Med. Ctr., 2013 WL 6284286 at *1; Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; (continued...)

The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

"The Court recognizes that it must extend extra consideration to pro se plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions." Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Peck, M.J.) (citations & internal quotations omitted); see, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they

---

3/      (...continued)
Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

suggest'").[4/]   "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Cole v. Artuz, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[5/]

### B.   Additional Summary Judgment Standards In Employment Discrimination Cases

When a case turns on the intent of one party, as employment discrimination and retaliation claims often do, a "trial court must be cautious about granting summary judgment." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).[6/]   Because the employer rarely leaves direct evidence of its discriminatory or retaliatory intent, the Court must

---

[4/]   See also, e.g., Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006); Fuller v. Armstrong, 204 F. App'x 987, 988 (2d Cir. 2006), cert. denied, 552 U.S. 906, 128 S. Ct. 209 (2007); Gildor v. U.S. Postal Serv., 179 F. App'x 756, 758 (2d Cir. 2006); Porter v. Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo Police Dep't, 46 F. App'x 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645 (2003).

[5/]   See also, e.g., United States v. Acomb, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); James v. Phillips, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); Thompson v. Tracy, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); Bunting v. Nagy, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); Rodriguez v. McClenning, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); Pack v. Artuz, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); Rector v. Sylvania, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); Walker v. Vaughan, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); Hussein v. The Waldorf-Astoria, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001), aff'd, 31 F. App'x 740 (2d Cir. 2002).

[6/]   Accord, e.g., Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004); Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) ("[I]n an employment discrimination case when, as here, the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment."); McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997) ("[C]aution must be exercised in granting summary judgment where motive is genuinely in issue."); Cardozo v. Healthfirst, Inc., 210 F. Supp. 2d 224, 227 (S.D.N.Y. 1999); see also, e.g., Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994).

carefully comb the available evidence in search of circumstantial proof to undercut the employer's explanations for its actions.  E.g., Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1224.  "[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial.  There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error."  Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted).  Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination or retaliation, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer.  E.g., Budde v. H&K Distrib. Co., No. 99-9449, 216 F.3d 1071 (table), 2000 WL 900204 at *1 (2d Cir. June 29, 2000); Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997); Meloff v. N.Y. Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995).

In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  Stern v. Trs. of Columbia Univ., 131 F.3d at 312; see, e.g., Schnabel v. Abramson, 232 F.3d 83, 90-91 (2d Cir. 2000); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) ("[T]he question [on summary judgment is] . . . whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination.  To get to the jury, it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination." (quotations & alterations omitted)), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (plaintiff must "produce not simply

'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge'").[2/]  Indeed, the Second Circuit "went out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'"  Weinstock v. Columbia Univ., 224 F.3d at 41.

### C.   Governing Legal Standard For Cases Under Title VII, the Age Discrimination in Employment Act, the Americans with Disabilities Act and the NYSHRL

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

---

[2/]   See also, e.g., Budde v. H&K Distrib. Co., 2000 WL 900204 at *1; Scaria v. Rubin, 94 Civ. 3333, 1996 WL 389250 at *5 (S.D.N.Y. July 11, 1996) (Peck, M.J.), aff'd, 117 F.3d 652 (2d Cir. 1997).

In connection with discrimination claims under Title VII, the ADEA and the ADA, the Second Circuit applies the burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).[8/] See, e.g.,

---

[8/]    Employment discrimination claims brought under the NYSHRL and the NYCHRL also are analyzed using the McDonnell Douglas analysis. E.g., Teasdale v. N.Y.C. Fire Dep't, FDNY, 574 F. App'x 50, 51 (2d Cir. 2014); Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010) ("This Court has determined that a plaintiff's discrimination claims under both the NYSHRL and the NYCHRL are subject to the burden-shifting analysis applied to discrimination claims under Title VII."); Fall v. N.Y.S. United Teachers, 289 F. App'x 419, 422 (2d Cir. 2008) ("The McDonnell Douglas burden-shifting analysis 'is also applicable to [the plaintiff's] claims under the NYSHRL.'"); Villar v. City of N.Y., 09 Civ. 7400, ---F. Supp. 3d----, 2015 WL 5707125 at *8 (S.D.N.Y. Sept. 29, 2015); John v. Dep't of Info. Tech. & Telecomm., 06 Civ. 13119, 2008 WL 4694596 at *3 (S.D.N.Y. Oct. 23, 2008) (McDonnell Douglas analysis applies to NYSHRL and NYCHRL claims.); Sandiford v. City of N.Y. Dep't of Educ., 22 N.Y.3d 914, 916 n.2; 977 N.Y.S.2d 699, 700 n.2 (2013); Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 n.3, 786 N.Y.S.2d 382, 391 n.3 (2004) ("The standards for recovery under the New York State Human Rights Law are the same as the federal standards under [T]itle VII of the Civil Rights Act of 1964. Thus, '[b]ecause both the Human Rights Law and [T]itle VII address the same type of discrimination, afford victims similar forms of redress, are textually similar and ultimately employ the same standards of recovery, federal case law in this area also proves helpful to the resolution of this appeal.' Further, the human rights provisions of the New York City Administrative Code mirror the provisions of the [New York State] Executive Law and should therefore be analyzed according to the same standards." (citations omitted)).

However, the NYCHRL is to be more liberally construed. E.g., Baldwin v. Goddard Riverside Cmty. Ctr., No. 14-4046, ---F. App'x----, 2015 WL 5294926 at *2 (2d Cir. Sept. 11, 2015); Lenart v. Coach Inc., 15 Civ. 1922, ---F. Supp. 3d----, 2015 WL 5319735 at *2 (S.D.N.Y. Sept. 11, 2015); Adams v. City of N.Y., 837 F. Supp. 2d 108, 128 (E.D.N.Y. 2011); Melman v. Montefiore Med. Ctr., 98 A.D.3d 107, 112, 946 N.Y.S.2d 27, 30 (1st Dep't 2012); Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 75, 872 N.Y.S.2d 27, 37-38 (1st Dep't), appeal denied, 13 N.Y.3d 702, 885 N.Y.S.2d 716 (2009); see also, e.g., Hanna v. N.Y. Hotel Trades Council, 18 Misc. 3d 436, 438 n.1, 851 N.Y.S.2d 818, 822 n.1 (Sup. Ct. N.Y. Cty. 2007) ("NYCHRL is to be liberally and independently construed with the aim of making it more protective than its federal . . . or state . . . counterparts."). As I previously explained: "As this Court has pointed out several times, while the cases . . . employ the same federal analysis to NYCHRL claims, the legislative history of the NYCHRL makes clear that it is to be even more liberally construed than the federal and state anti-discrimination laws." Viruet v. Citizen Advice Bureau, 01 Civ. 4594, 2002 WL 1880731 at *14 n.28 (S.D.N.Y. Aug. 15, 2002) (Peck, M.J.) (quotations omitted; citing cases).

Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 83 (2d Cir. 2015); Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012); Desir v. City of N.Y., 453 F. App'x 30, 33 (2d Cir. 2011); Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009).

Under the familiar McDonnell Douglas burden-shifting analysis, the plaintiff has the burden at the outset of "proving by the preponderance of the evidence a prima facie case of discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093 (1981);  see, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000); McDonnell Douglas Corp. v. Green, 411 U.S. at 802, 93 S. Ct. at 1824.[9] Establishment of a prima facie case "'in effect creates a presumption that the employer unlawfully discriminated against the employee.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506, 113 S. Ct. at 2747 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 254, 101 S. Ct. at 1094).[10]

---

[9]     See also, e.g., Raytheon Co. v. Hernandez, 540 U.S. 44, 50 n.3, 124 S. Ct. 513, 517 n.3 (2003); O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310, 116 S. Ct. 1307, 1309 (1996); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 2746-47 (1993); Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 83; Ruszkowski v. Kaleida Health Sys., 422 F. App'x 58, 60 (2d Cir. 2011); United States v. Brennan, 650 F.3d 65, 93 (2d Cir. 2011); Leibowitz v. Cornell Univ., 584 F.3d at 498; Dorfman v. Doar Commc'ns, Inc., 314 F. App'x 389, 390 (2d Cir. 2009); DeSalvo v. Volhard, 312 F. App'x 394, 396 (2d Cir.), cert. denied, 558 U.S. 932, 130 S. Ct. 70 (2009); Fall v. N.Y.S. United Teachers, 289 F. App'x at 420-21; Nader v. ABC Television, Inc., 150 F. App'x 54, 55 (2d Cir. 2005); Mandell v. Cty. of Suffolk, 316 F.3d 368, 377-78 (2d Cir. 2003); Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 767 (2d Cir. 2002); Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002); Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

[10]    See also, e.g., Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 83; Crawford v. Dep't of Investigation, 324 F. App'x 139, 141 (2d Cir. 2009); Smith v. New Venture Gear, Inc., 319 F. App'x 52, 54 (2d Cir. 2009); Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006), cert. denied, 549 U.S. 1282, 127 S. Ct. 1855 (2007); Mandell v. Cty. of Suffolk, 316 F.3d at 380; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997).

Once a plaintiff claiming employment discrimination establishes a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its employment decision.  E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142-43, 120 S. Ct. at 2106; McDonnell Douglas Corp. v. Green, 411 U.S. at 802, 93 S. Ct. at 1824.[11/]  The burden on the defendant at this phase is one of production rather than persuasion.  E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142, 120 S. Ct. at 2106.[12/]

"Although intermediate evidentiary burdens shift back and forth under [the McDonnell Douglas] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 143, 120 S. Ct. at 2106.

---

[11/]    See also, e.g., Raytheon Co. v. Hernandez, 540 U.S. at 50 n.3, 124 S. Ct. at 517 n.3; O'Connor v. Consol. Coin Caterers Corp., 517 U.S. at 310, 116 S. Ct. at 1309; St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506-07, 113 S. Ct. at 2747; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253-54, 101 S. Ct. at 1093-94; Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 83; Desir v. City of N.Y., 453 F. App'x at 33-34; United States v. Brennan, 650 F.3d at 93; Leibowitz v. Cornell Univ., 584 F.3d at 498-99; Dorfman v. Doar Commc'ns, Inc., 314 F. App'x at 390; DeSalvo v. Volhard, 312 F. App'x at 396; Fall v. N.Y.S. United Teachers, 289 F. App'x at 421; Nader v. ABC Television, Inc., 150 F. App'x at 55; Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004); Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Mandell v. Cty. of Suffolk, 316 F.3d at 380; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Schnabel v. Abramson, 232 F.3d at 88; Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003); Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997); Scaria v. Rubin, 117 F.3d at 654; Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 38.

[12/]    See also, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 507, 113 S. Ct. at 2747; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 257, 101 S. Ct. at 1096; Chiang v. Donahoe, 579 F. App'x 39, 42 (2d Cir. 2014); Terry v. Ashcroft, 336 F.3d at 144 n.17; Scaria v. Rubin, 117 F.3d at 654.

If the defendant articulates a non-discriminatory reason, the McDonnell Douglas burden-shifting framework drops out of the picture, and the plaintiff must show that the adverse employment decision more likely than not was motivated in whole or part by discriminatory reasons.[13/]  E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142-43, 120 S. Ct. at 2106.[14/]  "Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, . . . the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'"  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 143, 120 S. Ct. at 2106 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 255 n.10, 101 S. Ct. at 1095 n.10).

The Supreme Court in 2000 clarified the standard at this stage of the McDonnell Douglas analysis:

> [I]n St. Mary's Honor Center . . . . we held that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff.  The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the

---

[13/]    Under the ADEA, a plaintiff bringing a disparate treatment claim must demonstrate at the final stage of the McDonnell Douglas analysis that age discrimination was the "but-for" cause of the adverse employment action, not merely one of the motivating factors.  Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180, 129 S. Ct. 2343, 2352 (2009).

[14/]    See also, e.g., Raytheon Co. v. Hernandez, 124 S. Ct. at 517 n.3; St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 510, 113 S. Ct. at 2749; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253, 101 S. Ct. at 1093-94; Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 83; Allen v. Murray-Lazarus, 463 F. App'x 14, 16 (2d Cir. 2012); Desir v. City of N.Y., 453 F. App'x at 34; United States v. Brennan, 650 F.3d at 93; Leibowitz v. Cornell Univ., 584 F.3d at 499; DeSalvo v. Volhard, 312 F. App'x at 396; Fall v. N.Y.S. United Teachers, 289 F. App'x at 421; Feingold v. New York, 366 F.3d at 152; Mandell v. Cty. of Suffolk, 316 F.3d at 380-81; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Weinstock v. Columbia Univ., 224 F.3d at 42; Scaria v. Rubin, 117 F.3d at 654.

plaintiff's proffered reason . . . is correct." In other words, "[i]t is not enough . . . to dis believe the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."

In reaching this conclusion, however, we reasoned that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. . . .

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50 [or Rule 56], and we have reiterated that trial courts should not "'treat discrimination differently from other ultimate questions of fact.'"

Whether judgment as a matter of law [or summary judgment] is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 146-49, 120 S. Ct. at 2108-09 (emphasis added & citations omitted).

After <u>Reeves</u>, the Second Circuit has made clear that merely proving a prima facie case and disproving the employer's explanation for its conduct at the third step of the <u>McDonnell Douglas</u> analysis will not preclude summary judgment in all cases; rather, a case-by-case analysis is necessary:

> In examining the impact of <u>Reeves</u> on our precedents, we conclude that <u>Reeves</u> prevents courts from imposing a <u>per se</u> rule requiring <u>in all instances</u> that [a Title VII] claimant offer more than a prima facie case and evidence of pretext. . . . But the converse is not true; following <u>Reeves</u>, <u>we decline to hold that no [Title VII] defendant may succeed on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext.  Rather, we hold that the Supreme Court's decision in Reeves clearly mandates a case-by-case approach</u>, with a court examining the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff."

<u>Schnabel</u> v. <u>Abramson</u>, 232 F.3d at 90 (emphasis added).[15/]

---

[15/]   See also, e.g., Braun v. Securitas Sec. Servs. USA, Inc., 372 F. App'x 113, 114 (2d Cir. 2010); Butts v. N.Y.C. Dep't of Hous. Pres. & Dev., 307 F. App'x 596, 599 (2d Cir. 2009); Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005); Feingold v. New York, 366 F.3d at 152; Roge v. NYP Holdings, Inc., 257 F.3d 164, 167-68 (2d Cir. 2001); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 469-70 (2d Cir.), cert. denied, 534 U.S. 993, 122 S. Ct. 460 (2001); James v. N.Y. Racing Ass'n, 233 F.3d 149, 156-57 (2d Cir. 2000); Weinstock v. Columbia Univ., 224 F.3d at 42 ("In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."); Aksamit v. 772 Park Ave. Corp., 00 Civ. 5520, 2003 WL 22283813 at *6 (S.D.N.Y. Oct. 2, 2003) ("[A] plaintiff's establishment of a prima facie case and rebuttal of a nondiscriminatory reason for the adverse action do not save the plaintiff from summary judgment when there is insufficient evidence of discrimination."), aff'd, 128 F. App'x 204 (2d Cir. 2005); Weiser v. Forest Pharm., Inc., 99 Civ. 1809, 2001 WL 293951 at *7-8 (S.D.N.Y. Mar. 26, 2001); Tanay v. St. Barnabas Hosp., 99 Civ. 9215, 2001 WL 262695 at *4 (S.D.N.Y. Mar. 15, 2001); Connell v. Consol. Edison Co., 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000) (Chin, D.J.) ("The key is whether there is sufficient evidence in the record – whether it consists of just the prima facie case and proof of pretext alone or those items together with additional evidence – to support an inference of discrimination.").

## II.   THE CITY IS GRANTED SUMMARY JUDGMENT WITH RESPECT TO CONCEPCION'S DISCRIMINATION CLAIMS

Concepcion's discrimination claims under Title VII, the ADA, the ADEA and the NYSHRL are based on the City's alleged failure to provide her workplace training, overtime hours, performance evaluations or a promotion, and failure to accommodate her alleged disability.  (Dkt. No. 26: SAC at 3.)

Concepcion's claims are governed by the McDonnell Douglas framework, and thus Concepcion must first establish a prima facie case of discrimination under each statute.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973); see cases cited at page 15 above.  In order to make out a prima facie case of discrimination under Title VII, Concepcion must establish that (1) she is within a protected group; (2) she was qualified for the job at issue; (3) she was subjected to an adverse employment action; and (4) this action occurred under circumstances giving rise to an inference of discrimination.  See, e.g., White v. Andy Frain Servs., Inc., No. 14-3332, --- F. App'x ----, 2015 WL 6684485 at *1 (2d Cir. Nov. 3, 2015)

To establish a prima facie case of age discrimination under the ADEA, Concepcion must establish  that (1) she is within the protected age group; (2) she was qualified for the job at issue; (3) she was subjected to an adverse employment action; and (4) this action occurred under circumstances giving rise to an inference of discrimination.  See, e.g., Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012).

To establish a prima facie case of discrimination under the ADA, Concepcion must establish that (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or

without reasonable accommodation; and (4) she suffered adverse employment action because of her disability.  See, e.g., McDonnell v. Schindler Elevator Corp., 618 F. App'x 697, 698 (2d Cir. 2015).

To establish a claim under the NYSHRL, Concepcion also must set forth a prima facie case of discrimination.  See, e.g., McGill v. Univ. of Rochester, 600 F. App'x 789, 790 (2d Cir. 2015) (prima facie standard under NYSHRL parallel to Title VII); Farzan v. Genesis 10, 619 F. App'x 15, 17 (2d Cir. 2015) (prima facie standard under NYSHRL parallel to Title VII and ADEA); McDonnell v. Schindler Elevator Corp., 618 F. App'x at 698 (prima facie standard under NYSHRL parallel to ADA).

The City does not dispute that as a forty-nine year old, dark skinned, African American female, and a practicing Jehovah's Witness, with limited mobility, Concepcion has several protected characteristics under Title VII, is within the protected age group under the ADEA, and is disabled. (See generally Dkt. No. 42: City Br.)  Additionally, the adverse employment actions Concepcion complains of, such as denial of training and opportunities to earn overtime and failure to promote (see pages 3-6 above), are "materially adverse change[s] in the terms and conditions of employment" sufficient to satisfy the third element of a prima facie case of discrimination.  Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)  ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."); see also, e.g., Duzant v. Elec. Boat Corp., 81 F. App'x 370, 372 (2d Cir. 2003) (analyzing denial of overtime as an adverse employment action).[16]

---

[16]    While Concepcion also alleges that she has been denied performance evaluations (see page
(continued...)

Nevertheless, Concepcion fails to establish a prima facie case of discrimination under any of the relevant statutes, because she has not demonstrated that the circumstances surrounding the adverse actions give rise to an inference of discrimination, or that the adverse employment actions occurred because of her disability. See, e.g., Littlejohn v. City of N.Y., 795 F.3d 297, 312 (2d Cir. 2015) ("An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009))).

### A. Concepcion Fails to Establish an Inference of Discrimination as to the Alleged Lack of Training

Concepcion testified that training toward her certified buyers' certificate would advance her career. (See page 4 above.) As evidence that she has been denied training, Concepcion submitted an email in which she asks her supervisor for an update as to her request for training. (Dkt. No. 60-4: Concepcion Opp. Br. Exs. at 10.) Aside from an unsworn allegation that she was informed "by Scott numerous . . . time[s] that Urina was attend[ing] training" (id.), Concepcion has not offered any further evidence regarding the alleged lack of training, for example when it occurred, or that the City allowed younger, white or non-disabled employees to attend training from which she was excluded. (See page 4 above.) Moreover, Concepcion was not subject to any

---

16/     (...continued)
4 above) she has not alleged that the lack of performance evaluations has had detrimental effects on her employment. Accordingly, the lack of performance evaluations is not an adverse employment action and the Court will not further analyze this aspect of Concepcion's discrimination claim. See, e.g., Chung v. City Univ. of N.Y., 605 F. App'x 20, 22 (2d Cir. 2015) (without "tangible consequences" even a negative performance review is not an adverse employment action).

disparaging remarks about any of her protected traits.  (See page 5 above.)  A reasonable juror could not find an inference of discrimination, or determine that any lack of training (if any) was because of any of Concepcion's protected characteristics, based on the simple fact that Concepcion was not given permission to attend training.  See, e.g., Encarnacion v. Isabella Geriatric Ctr., Inc., 11 Civ. 3757, 2014 WL 7008946 at *7 (S.D.N.Y. Dec. 12, 2014) ("Plaintiff fails to make out a prima facie case . . .  because she fails to bring any evidence that would give rise to an inference of discrimination."); Mazyck v. Metro. Transp. Auth., 893 F. Supp. 2d 574, 588 (S.D.N.Y. 2012) ("The mere fact that Plaintiff did not receive the training that he wanted, when he wanted it, does not raise an inference of discrimination."); Lee v. Healthfirst, Inc., 04 Civ. 8787, 2007 WL 634445 at *14 (S.D.N.Y. Mar. 1, 2007) ("Plaintiff's generalized claim that there was a training program and that she suffered harm by being excluded from it, is insufficient to establish a prima facie case of discrimination in training.").

Accordingly, the Court grants the City's summary judgment motion on Concepcion's Title VII, ADEA, ADA and NYSHRL lack of training claims.

### B.   Concepcion Fails to Establish an Inference of Discrimination as to the Alleged Denial of Overtime

Concepcion asserts a discriminatory denial of the opportunity to work overtime hours.  (Dkt. No. 26: SAC at 3; Dkt. No. 60: Concepcion Opp. Br. at 5.)  As an initial matter, Concepcion fails to allege any specific facts regarding the denial of overtime, or provide any evidence that she requested and was denied overtime.   "[W]ithout 'affirmative and specific' supporting evidence that [she was] actually denied overtime, this claim cannot survive summary judgment." Hubbard v. Port Auth. of N.Y. & N.J., 05 Civ. 4396, 2008 WL 464694 at *12 (S.D.N.Y. Feb. 20, 2008).

Moreover, Concepcion fails to establish that the alleged denial of overtime occurred under circumstances giving rise to an inference of discrimination, or because of her disability. Concepcion testified that she never heard a derogatory remark about any of her protected characteristics, and that her belief that she was discriminated against is based entirely on the occurrence of the adverse employment events.  (E.g., Dkt. No. 60-1: Concepcion Opp. Br. Exs.: Concepcion Dep. at 175 ("Just [Carolan's] actions" made Concepcion feel that she was subjected to adverse treatment "because of [her] race.").)

In an apparent effort to raise an inference of discrimination through a showing of disparate treatment, Concepcion has provided payroll records for various DOT and other City agency procurement analysts.  (See Dkt. No. 60-3: Concepcion Opp. Br. Exs. at 15-30.)  A disparate treatment claim can be established by "showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group." Abdul–Hakeem v. Parkinson, 523 F. Appx. 19, 20 (2d Cir. 2013).  The Second Circuit has held that to establish disparate treatment, a plaintiff must show that she was "'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." Graham v. L.I.R.R., 230 F.3d 34, 39 (2d Cir. 2000); see also, e.g., Johnson v. Andy Frain Servs., Inc., No. 15-1143, --- F. App'x ----, 2016 WL 210098 at *2 (2d Cir. Jan. 19, 2016).

Some of the employees' payroll records have higher "total" pay than their listed "annual" rate, which perhaps reflects overtime pay.  (See page 4 above.)  Concepcion has annotated the payroll records to indicate the sex, nationality and/or race of some of the employees with whom she seeks to compare herself, and has noted in a few instances whether the employee is younger than she is, or has less experience than she does.  (See, e.g., Dkt. No. 60-3: Concepcion Opp. Br. Exs. at 16, 25.)  The limited information Concepcion provides about the other employees (in many instances

simply the letters "W" and "M," which the Court assumes indicates a white male) is not sufficient to allow a reasonable juror to conclude that Concepcion was similarly situated in all material respects to the putative comparators. Concepcion has presented no evidence that she and the putative comparators reported to the same supervisor or were tasked with similar responsibilities. See, e.g., Sethi v. Narod, 12 F. Supp. 3d 505, 546 (E.D.N.Y. 2014) ("Plaintiff has failed to demonstrate how he is similarly situated to these individuals. For example, Plaintiff has provided copies of emails and other documents which reference the titles of some individuals, such as in email signature blocks, but these documents fail[] to provide any specificity concerning the nature of those employees' job duties or responsibilities . . . ."); Whethers v. Nassau Health Care Corp., 956 F. Supp. 2d 364, 379 (E.D.N.Y. 2013) ("These allegations . . . do not provide sufficient evidence that defendants treated her less favorably than similarly situated employees because plaintiff fails to name similarly situated individuals with similar job titles and responsibilities. As a result, these conclusory allegations of discriminatory intent are not sufficient to make out the required prima facie case."); Gonzalez v. City of N.Y., 354 F. Supp. 2d 327, 340-41 (S.D.N.Y. 2005) ("Plaintiffs do not produce sufficiently specific evidence to support a reasonable inference of discrimination. For example, they do not address the basis on which NYPD decisions to allow detectives to work overtime . . . or present any specific facts about the detectives who were permitted to work overtime . . . that would place them in a situation similar to [plaintiff]. Therefore, these claims do not survive summary judgment."). Concepcion has failed to establish that the denial of overtime occurred in circumstances giving rise to an inference of discrimination, or because of her disability.

Even if Concepcion had established a prima facie case of discrimination as to the alleged denial of overtime, the City has set forth a legitimate, non-discriminatory reason to explain why Concepcion did not receive overtime hours–her workload did not warrant overtime. (See page

3 above.)  Concepcion therefore "carries the ultimate burden of persuasion and must produce evidence such that a rational finder of fact could conclude that the adverse action taken against her was more likely than not a product of discriminatory animus." Leibowitz v. Cornell Univ., 584 F.3d 487, 504 (2d Cir. 2009); see cases cited at page 17 above. Concepcion has failed to do so. Concepcion admits that she never was subjected to discriminatory remarks.  (See page 5 above.) Concepcion has not submitted any evidence to show that it is more likely than not that City's purported explanation for her lack of overtime hours is merely pretext for discriminatory animus.

Accordingly, the City's summary judgment motion is granted as to Concepcion's Title VII, ADA, ADEA and NYSHRL denial of overtime claims.

### C.    Concepcion Fails to Establish an Inference of Discrimination as to the City's Alleged Failure to Promote Her

To establish a prima facie case of a discriminatory failure to promote, a plaintiff must demonstrate that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." Petrosino v. Bell Atl., 385 F.3d 210, 226 (2d Cir. 2004).[17]  Concepcion's burden in establishing a prima facie case is not "'onerous,'" indeed, it is "'de minimis,'" Beyer v. Cty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008), and is satisfied by "evidence that raises a reasonable

---

[17]    See also, e.g., Wade v. N.Y.C. Dep't of Educ., 11 Civ. 05278, 2014 WL 941754 at *7 (S.D.N.Y. Mar. 10, 2014) (analyzing failure to promote claims under Title VII, the ADA and the ADEA); Johnston v. Carnegie Corp. of N.Y., 10 Civ. 1681, 2011 WL 1085033 at *11 (S.D.N.Y. Feb. 24, 2011) (noting that failure to promote claims under the NYSHRL are governed by the federal standard), R. & R. adopted, 2011 WL 1118662 (S.D.N.Y. Mar. 23, 2011).

inference that the action taken by an employer was based on an impermissible factor." Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008).

The City does not dispute that Concepcion satisfies the first three elements of the prima facie case of discriminatory failure to promote, but asserts that she cannot establish that the positions that she applied for remained open while the City continued to seek applicants with her qualifications.  (See Dkt. No. 42: City Br. at 15-18.)  Concepcion may satisfy the fourth element of a prima facie case by demonstrating that a position she applied for was filled by an individual outside her protected class.  See, e.g., Littlejohn v. City of N.Y., 795 F.3d 297, 312-13 (2d Cir. 2015); Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 451 (S.D.N.Y. 2013), aff'd, 588 F. App'x 15 (2d Cir. 2014).  One of the positions Concepcion applied for was filled by a male candidate (Dkt. No. 41: City 56.1 Stmt. ¶¶ 36, 39), and another by a white candidate (Dkt. No. 60-1: Concepcion Opp. Br. Exs.: Concepcion Dep. at 112), both of whom are thus outside of Concepcion's protected classes.

Assuming arguendo that Concepcion has established a prima facie case, she has not made any showing that the City's assertion that the hired candidates had superior qualifications is pretextual.  (See, e.g., City Br. at 19; Dkt. No. 56: Murrell Aff. Ex. F: Carolan Aff. ¶¶ 3-5; Murrell Aff. Ex. E: Oliveto Aff. ¶¶ 3-5.)[18/]  The City asserts that Andrew Cammock, Nicola Rahman and Ana Betancourt were better qualified candidates because they each had experience as senior level procurement analysts for other City agencies.  (See pages 4-5 above.)  Chassidi Miner performed better than Concepcion in her interview, and holds a college degree.  (See page 5 above; see also

---

[18/]   Concepcion testified in her deposition that Mirela, Urenia, and Susan Gabrielli heard Nancy Carolan say that as long as Concepcion worked under her she was "not going to get anywhere."  (Dkt. No. 60-1: Concepcion Opp. Br. Exs.: Concepcion Dep. at 178.)  That testimony, however, is inadmissible hearsay.

Oliveto Aff. Exs. at 6.)  Concepcion's subjective assessment of her own qualifications (see Dkt. No. 60-4: Concepcion Opp. Br. Exs. at 15 ¶ VI) is insufficient to create a genuine factual issue as to whether the City's proffered reasons for its hiring decisions are pretext for discrimination.  See, e.g., Chenette v. Kenneth Cole Prods., Inc., 345 F. App'x 615, 619 (2d Cir. 2009); Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001) (a material factual issue can be created only where "the plaintiff's credentials [are] so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." (quotation & citation omitted)); Sattar v. Johnson, 12 Civ. 7828, 2015 WL 5439064 at *12 (S.D.N.Y. Sept. 11, 2015) ("To fault the [employer] for selecting Smith over [plaintiff] would improperly require the factfinder to act as a 'super personnel department,' second-guessing the merits of the [employer's] decision to select Smith for the position over" plaintiff.); Chapotkat v. Cty. of Rockland, 11 Civ. 6209, 2014 WL 1373531 at *9 (S.D.N.Y. Apr. 4, 2014), aff'd, 605 F. App'x 24 (2d Cir. 2015); Milano v. Astrue, 05 Civ. 6527, 2008 WL 4410131 at *32 (S.D.N.Y. Sept. 26, 2008) ("[c]ourts . . . afford employers a great deal of discretion in assessing the credentials and qualifications of applicants and in determining the criteria for positions."), aff'd, 382 F. App'x 4 (2d Cir. 2010).

Concepcion again points to payroll records to establish that "males and predominantly white males as well as the woman who is over 40 [years] of age are listed and who has not received a promotion to Procurement Analyst Level II, III."  (Dkt. No. 60: Concepcion Opp. Br. at 5.)  The payroll records do not indicate if or when other City employees applied for promotions, or include information about the gender, race, age, or disability status of the applicant pool for promotions.  "Without such information, it is impossible to determine if the selections for particular positions deviate from the rate of selection that would be expected if the personal

characteristics of the applicants were not influencing the decisionmakers' selections." <u>Sattar</u> v. <u>Johnson</u>, 2015 WL 5439064 at *12.  Further, the City has submitted evidence to demonstrate that procurement analyst promotions are merit based and do not occur as of right based on years of experience.  (<u>See</u> pages 4-5 above.)  Concepcion's own submissions support this assertion.  (<u>See</u>, <u>e.g.</u>, Dkt. No. 60-3 Concepcion Opp. Br. Exs. at 31 (any movement "from level to level within the title of Procurement Analyst . . . is at management's discretion"); <u>id.</u> at 32 (there is "no automatic maturation" between procurement analyst levels).)

Accordingly, Concepcion has failed to rebut the City's legitimate, non-discriminatory reasons for its failure to hire her for a more senior procurement analyst role.  The City's summary judgment motion thus is granted as to Concepcion's Title VII, ADA, ADEA and NYSHRL claims for discriminatory failure to promote.

## III.   THE CITY IS GRANTED SUMMARY JUDGMENT WITH RESPECT TO CONCEPCION'S REASONABLE ACCOMMODATION CLAIMS

The ADA and the NYSHRL require an employer to afford reasonable accommodation for an employee's known disability unless the accommodation would impose an undue hardship on the employer.  42 U.S.C. § 12112(b)(5)(A); N.Y. Exec. L. § 296(3)(a).  To maintain a claim under either statute, Concepcion must show that: "(1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of h[er] disability; (3) with reasonable accommodation, [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." <u>Noll</u> v. <u>Int'l Bus. Machines Corp.</u>, 787 F.3d 89, 94 (2d Cir. 2015).

**A.**     **It Is Not Clear that Concepcion's Disability Is Sufficiently Alleged Under the ADA**

A person is disabled within the meaning of the ADA if she "(a) has a physical or mental impairment that substantially limits one or more of h[er] major life activities; (b) has a record of such an impairment; or (c) [is] regarded as having such an impairment."  See 42 U.S.C. § 12102(1). To establish a disability that substantially limits one or more major life activities, Concepcion must: "(1) show that [she] suffers from a physical or mental impairment; (2) identify an activity claimed to be impaired and establish that it constitutes a major life activity; and (3) show that [her] impairment substantially limits the major life activity." Sternkopf v. White Plains Hosp., 14 Civ. 4076, 2015 WL 5692183 at *5 (S.D.N.Y. Sept. 25, 2015) (citing Colwell v. Suffolk Cty. Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998)).  The substantial limitation standard is not meant to be demanding, and "should not demand extensive analysis."  29 C.F.R. § 1630.2(j)(1)(iii); see also, e.g., Hernandez v. City of N.Y., 11 Civ. 6644, 2015 WL 321830 at *15 (S.D.N.Y. Jan. 23, 2015).

Concepcion's alleged disabilities are to her back, neck, right hip, legs, hands and right arm.  (See page 2 above.)  Concepcion's EEOC complaint identifies her disability as "limited mobility-back, walking, lifting." (See page 3 above.)  Beyond the bare allegations in her complaint, and testimony that her various disabilities cause pain (e.g., Dkt. No. 60-1: Concepcion Opp. Br. Exs.: Concepcion Dep. at 127, 133), Concepcion has presented little evidence as to what her impairment is, or how it substantially limits a major life activity.  Notes from Concepcion's doctor, Dr. Patel, indicate that Concepcion's disability "requires" use of "a private automobile for transportation." (Dkt. No. 60-6: Concepcion Opp. Br. Exs. at 23, 38.)  On November 14, 2014, Dr. Patel indicated that Concepcion has "painful ambulation" and could walk for only five minutes

before she would require a rest.  (Id. at 23.)  On October 14, 2015, Dr. Patel noted that Concepcion "cannot stand or walk for periods of time deemed 'normal.'"  (Id. at 38.)  Concepcion's testimony, however, contradicts Dr. Patel's findings. (See, e.g., Concepcion Dep. at 127 (to relieve her hip pain Concepcion gets "up to walk"); id. at 163 (Concepcion does not need her cane every day to assist with walking); id. at 193 (Concepcion walks twenty blocks to and from her parking space each day).)

The Second Circuit has made clear that "vague" descriptions of restrictions of major life activities are insufficient to constitute evidence showing substantial limitations of major life activities.  See, Parada v. Banco Indus. De Venezuela, C.A., 753 F.3d 62, 69 (2d Cir. 2014).  As Concepcion has provided almost no description of the substantial limitations her impairments cause, she has not met even the minimal burden of establishing that she is disabled within the meaning of the ADA.  In any event, summary judgment also is appropriate on Concepcion's ADA and NYSHRL claims because Concepcion has not established that the City failed to provide her with reasonable accommodations.

### B.       The City Provided Reasonable Workstation Accommodations

Concepcion's doctor, Jessica Au, recommended that Concepcion receive an ergonomic chair and keyboard to accommodate her limited mobility.  (See Dkt. No. 60-7: Concepcion Opp. Br. Exs. at 11: 3/28/14 Doctor's note.)  Concepcion's EEOC complaint likewise identifies a special chair, mouse and keyboard as accommodations sought, and acknowledges that she received each of those things, although it "took 2 months."  (See page 6 above.)

"[I]n a case such as this, in which the employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is 'plainly reasonable.'"  Noll v. Int'l Bus. Machines

Corp., 787 F.3d 89, 94 (2d Cir. 2015); see also, e.g., Gronne v. Apple Bank For Sav., 1 F. App'x 64, 67 (2d Cir. 2001) ("Summary judgment is . . . appropriate where a plaintiff fails to identify a facially reasonable accommodation that the defendant refused to provide, or when the employer offers an accommodation that is 'plainly reasonable.'" (citation omitted)).  A reasonable accommodation is one that "enable[s] an individual with a disability who is qualified to perform the essential functions of that position . . . [or] to enjoy equal benefits and privileges of employment."  29 C.F.R. § 1630.2(o)(1)(ii), (iii).  Concepcion has presented no evidence to demonstrate that the City's accommodations for her limited mobility are insufficient, and does not dispute that the accommodations provided enable her to perform the "essential functions" of her position.  (See Dkt. No. 56: Murrell Aff. Ex. A: Concepcion Dep. at 57 ("Q: Was the keyboard satisfactory to you? A: Yes."); id. at 60 ("Q: . . . Aside from it being uncomfortable, are you able to do your daily tasks? A: Yes, I'm able to do it.").)  Instead, the evidence demonstrates that the City provided Concepcion with the very accommodations she requested, and continued to explore solutions when Concepcion complained she needed further accommodation in the form of a more straight chair and different keyboard location.  (See, e.g., Dkt. No. 60-7: Concepcion Opp. Br. Exs. at 18: 7/22/15 Email from Robert Grant ("Providing you with an adjustable keyboard tray is no problem.  Do you want to try out the ergonomic chairs with high backs . . . ?"); Dkt. No. 26-3: SAC Exs. at 63: 2/13/15 Email from Urenia Rosa ("Keyboard tray to be moved to another location under the desk for Tina Concepcion workstation 8-04F.").)[19]

---

[19]    To establish that the City's two month delay in providing a chair, mouse, and special keyboard was a violation of the ADA, Concepcion "is required to provide evidence that the delay was motivated by the employer's discriminatory intent, as opposed to mere negligence."  Clark v. Jewish Childcare Ass'n, Inc., 96 F. Supp. 3d 237, 260 (S.D.N.Y. 2015) (five week delay in providing reasonable accommodations did not violate the ADA); (continued...)

Accordingly, the Court finds that the City's accommodations were reasonable.  See, e.g., Howard v. United Parcel Serv., Inc., 101 F. Supp. 3d 343, 355-56 (S.D.N.Y. 2015) (accommodations reasonable as a matter of law where employer made "numerous modifications" to allow employee to perform job functions); Muhammad v. Wal-Mart Stores E., L.P., No. 10-CV-6074, 2012 WL 3201668 at *10 (W.D.N.Y. Aug. 2, 2012) ("Defendant gave Plaintiff a non-taxing assignment as an accommodation, and Plaintiff's complaint about one aspect of that assignment . . . which he was able to perform, does not create a triable issue of fact as to the reasonableness of the accommodation."), aff'd, 532 F. App'x 21 (2d Cir. 2013); Krikelis v. Vassar Coll., 581 F. Supp. 2d 476, 487 (S.D.N.Y. 2008) ("Although Plaintiff views the accommodation offered as insufficient for her condition, the relevant legal question is whether it was a reasonable accommodation as part of the interactive process in light of Plaintiff's contributions to that process. . . .  [G]iven Defendants' response to Plaintiff's doctors note, Plaintiff was required to produce something more-a further doctor's note, a written explanation of the insufficiency of the offered accommodation-before Defendants' could be required by law to revise the offered accommodation. To make any other finding would entirely defeat the axiom that an employer is required only to

---

19/   (...continued)
Saunders v. Queensborough Cmty. Coll., No. 13 CV 5617, 2015 WL 5655719 at *7 (E.D.N.Y. Sept. 24, 2015) (seven month delay in providing accommodation did not violate the ADA); but cf. Lewis v. Boehringer Ingelheim Pharm., Inc., 79 F. Supp. 3d 394, 411 (D. Conn. 2015) (eight or nine month delay could constitute a failure to accommodate); O'Toole v. Ulster Cty., No. 12–CV–1228, 2014 WL 4900776 at *8 (N.D.N.Y. Sept. 30, 2014) (six month delay in providing ergonomic chair unreasonable); Logan v. Matveevskii, 57 F. Supp. 3d 234, 271 (S.D.N.Y. 2014) ("courts have found plaintiffs' requests for reasonable accommodations to have been constructively denied after delays approximating four months." (collecting cases)).  Concepcion points to no evidence to demonstrate that the alleged two month delay in providing her reasonable accommodations was motivated by discriminatory intent, thus any claim of constructive denial is without merit.

provide reasonable accommodation and not every accommodation that an employee may request.") (citations omitted)).

Thus, the City is granted summary judgment on Concepcion's ADA and NYSHRL reasonable accommodation claims as they pertain to her workstation and chair.

### C.   Concepcion Has Not Shown Entitlement to a Disability Parking Permit

The Second Circuit has established a two-step process to determine whether a defendant-employer's failure to provide a proposed accommodation constitutes a violation of the ADA.  First, "[t]he plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment."  McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 97 (2d Cir. 2009).  "If the plaintiff meets that burden, the analysis shifts to the question whether the proposed accommodation is reasonable; on this question the burden of persuasion lies with the defendant." Jackan v. N.Y.S. Dep't of Labor, 205 F.3d 562, 566 (2d Cir.), cert. denied, 531 U.S. 931, 121 S. Ct. 314 (2000).

To succeed on a failure to accommodate claim, Concepcion must first demonstrate, by more than "mere speculation," that an accommodation "existed and was available to her employer."  Jackan v. N.Y.S. Dep't of Labor, 205 F.3d at 566-67; see also, e.g., Henrietta D. v. Bloomberg, 331 F.3d 261, 280 (2d Cir. 2003) (to carry her burden, a plaintiff has "to suggest the existence of a plausible accommodation"), cert. denied, 541 U.S. 936, 124 S. Ct. 1658 (2004); Monterroso v. Sullivan & Cromwell, LLP, 591 F. Supp. 2d 567, 581 (S.D.N.Y. 2008) ("An accommodation is 'reasonable' only if it 'seems reasonable on its face, i.e., ordinarily or in the run of cases;' this means it is 'reasonable' if it appears to be 'feasible' or 'plausible.'").

To the extent Concepcion's complaint can be read to state a reasonable accommodation claim as to the denial of her disability parking permit (see page 3 above), the City

asserts that doctors designated by DOHMH make determinations regarding eligibility for parking permits (see Dkt. No. 42: City Br. at 11-13).  The City further asserts that under the Rules of the City of New York, Concepcion is not eligible for a disability parking permit because her ailments do not "qualify under any of the categories of conditions which constitute 'a permanent disability seriously impairing mobility.'"  (City Br. at 13-17; see also 24 Rules of the City of N.Y. 16-01.)  Indeed, the DOHMH doctor who assessed Concepcion's eligibility determined on July 30, 2014 that Concepcion was not eligible for a disability parking permit for that very reason.  (See Dkt No. 26-7: SAC Exs. at 53.)

There is no evidence that the DOT had any control over the DOHMH doctor's eligibility determination, or that it was possible for the DOT to ensure that Concepcion received a disability parking permit which was denied by DOHMH.  Concepcion's conclusory allegation that Nancy Carolan had a "transpiring conversation" and submitted false medical documentation to prevent Concepcion from receiving a permit (see Dkt. No. 60-1: Concepcion Opp. Br. Exs.: Concepcion Dep. at 188) is inadmissible speculation, insufficient to create an issue of fact as to whether the DOT controlled her application and by extension refused to accommodate her. Concepcion's August 14, 2014 email to DOHMH Commissioner Mary Bassett demonstrates that Concepcion was aware that the issuance of parking permits was outside the purview of her employer.  (Dkt. No. 60-6: Concepcion Opp. Br. Exs. at 29: 8/14/14 email.)  Accordingly, the Court finds that as to her parking permit, Concepcion has failed to identify a reasonable accommodation that her employer refused to make.[20]   Summary judgment thus is granted to the City on

---

[20]    Concepcion appears to claim that a 2015 application for a disability parking permit also was denied. (See Dkt. No. 60-6: Concepcion Opp. Br. Exs. at 26.)  Contradictorily, Concepcion asserts that as of December 31, 2015 she has been "afraid to submit any new application" (continued...)

Concepcion's ADA and NYSHRL reasonable accommodation claim as to a disability parking permit.

## IV.   CONCEPCION FAILS TO ESTABLISH IMPERMISSIBLE RETALIATION

### A.   Retaliation Standards

Under Title VII, it is unlawful for an employer to "retaliate" by discriminating against an employee because the employee engaged in protected activity, that is, "has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).[21/]   The anti-retaliation provisions under the ADA, ADEA and NYSHRL are similar.   See 42 U.S.C. 12203(a)-(b); 29 U.S.C. § 623(d); N.Y. Exec. Law § 296(7).

---

[20/]   (...continued)
for a parking permit. (Id. at 50.)  Aside from emails that Concepcion indicates pertain to her 2014 parking permit denials (id. at 27, 33), there is no evidence to support Concepcion's allegation that she applied for and was denied a parking permit in 2015.  Accordingly, the Court will not address this claim further.

[21/]   See, e.g., Univ. Tex. Sw. Med. Ctr. v. Nasser, 133 S. Ct. 2517, 2528 (2013); Crawford v. Metro. Gov't of Nashville & Davidson Cty., 555 U.S. 271, 274, 129 S. Ct. 846, 850 (2009); Chiang v. Donahoe, 579 F. App'x 39, 40 (2d Cir. 2014); Sengillo v. Valeo Elec. Sys., Inc., 328 F. App'x 39, 40-41 (2d Cir. 2009); Richardson v. Comm'n on Human Rights & Opportunities, 532 F.3d 114, 120-21 (2d Cir. 2008), cert. denied, 558 U.S. 932, 130 S. Ct. 56 (2009); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 241 (2d Cir. 2007); Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006); Terry v. Ashcroft, 336 F.3d 128, 140 (2d Cir. 2003); Diaz v. Weill Med. Ctr. of Cornell Univ., 02 Civ. 7380, 2004 WL 285947 at *21 (S.D.N.Y. Feb. 13, 2004) (Peck, M.J.), aff'd, 138 F. App'x 362 (2d Cir. 2005); Minott v. Port Auth. of N.Y. & N.J., 116 F. Supp. 2d 513, 520, 524 (S.D.N.Y. 2000) ("Title VII defines protected activities as (1) an employee's opposition to any activity which is prohibited by Title VII, or (2) an employee's participation in any Title VII investigation or proceeding."); see also Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988) ("The objective of [the section prohibiting retaliation] is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice.").

To succeed on a claim of retaliation under Title VII, the ADA, the ADEA or the NYSHRL "a plaintiff must show that 1) the employee engaged in protected activity; 2) the employer was aware of that activity; 3) the employee suffered an adverse employment action; and 4) there was a causal connection between the protected activity and the adverse employment action." Blanco v. Brogan, 620 F. Supp. 2d 546, 553 (S.D.N.Y. 2009); accord, e.g., Littlejohn v. City of N.Y., 795 F.3d 297, 316 (2d Cir. 2015); Caskey v. Cty. of Ontario, 560 F. App'x 57, 58 (2d Cir. 2014) (ADA retaliation standard); Graves v. Deutsche Bank Sec., Inc., 548 F. App'x 654, 656 (2d Cir. 2013) (ADEA retaliation standard), cert.denied, 135 S. Ct. 942 (2015); Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013) (NYSHRL retaliation standard same as Title VII retaliation standard); Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d at 205-06; Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); Weixel v. Bd. of Educ., 287 F.3d 138, 148-49 (2d Cir. 2002).[22/]

Title VII, ADA, ADEA and NYSHRL retaliation claims are governed by the McDonnell Douglas burden-shifting analysis. E.g., Littlejohn v. City of N.Y., 795 F.3d at 316 11; Kirkland v. Cablevision Sys., 760 F.3d 223, 225 (2d Cir. 2014); Graves v. Deutsche Bank Sec., Inc., 548 F. App'x at 656 (ADEA); Ben-Levy v. Bloomberg, L.P., 518 F. App'x 17, 19 (2d Cir. 2013) (ADA); Summa v. Hofstra Univ., 708 F.3d at 125 (NYSHRL); Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552-53 (2d Cir. 2010).[23/]   Thus, once a plaintiff makes out a prima facie case of retaliation, the

---

[22/]   See also, e.g., Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001); Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000); Chinnery v. N.Y.S. Office of Children & Family Servs., 10 Civ. 882, 2014 WL 1651950 at *11 (S.D.N.Y. Apr. 25, 2014), R. & R. adopted, 2015 WL 1029601 (S.D.N.Y. Mar. 10, 2015); Munck v. New Haven Sav. Bank, 251 F. Supp. 2d 1078, 1085 (D. Conn. 2003).

[23/]   See also, e.g., Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005); Terry v. Ashcroft, 336 F.3d at 141; Diaz v. Weill Med. Ctr. of Cornell Univ., 2004 WL 285947 at *21 & n.27 (& cases cited (continued...)

burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its

action.  E.g., Kaytor v. Elec. Boat Corp., 609 F.3d at 552-53; Hicks v. Baines, 593 F.3d at 164; Jute

v. Hamilton Sundrand Corp., 420 F.3d at 173.  If the defendant meets this burden, to avoid

summary judgment the plaintiff must point to evidence sufficient to present an inference that the

proffered reason is a mere pretext for retaliation.  E.g., Kirkland v. Cablevision Sys., 760 F.3d at

225; Kaytor v. Elec. Boat Corp., 609 F.3d at 552-53; Hicks v. Baines, 593 F.3d at 164; Jute v.

Hamilton Sundrand Corp., 420 F.3d at 173.

      Causation can be established either directly through evidence of retaliatory animus,

or indirectly by demonstrating that the adverse employment action followed quickly on the heels

of the protected activity or through other evidence such as disparate treatment of fellow employees.

See, e.g., Kercado-Clymer v. City of Amsterdam, 370 F. App'x 238, 242-43 (2d Cir. 2010);

Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d at 224; DeCintio v. Westchester Cty. Med.

Ctr., 821 F.2d 111, 115 (2d Cir.), cert. denied, 484 U.S. 965, 108 S. Ct. 455 (1987).  "Title VII

retaliation claims must be proved according to traditional principles of but-for causation . . . .  This

requires proof that the unlawful retaliation would not have occurred in the absence of the alleged

wrongful action or actions of the employer."  Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. at

2533; accord, e.g., Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 n.5 (2d Cir. 2013).

    **B.**    **Application to Concepcion's Claims**

      Concepcion asserts that the City began retaliating against her in 2011 for inquiring

about the status of a position for which she previously had interviewed.  (Dkt. No. 60-1: Concepcion

Opp. Br. Exs.: Concepcion Dep. at 161.)  Concepcion further asserts that in 2012, she asked about

---

[23]/     (...continued)
     therein).

another position for which she had applied and the City "really start[ed]" to retaliate, by denying "various things as far as [her] worker's comp injury." (Id. at 161.)  Because inquiring after a job application is not a protected activity, and there is no evidence that Concepcion's inquiries alleged discrimination or discriminatory practices, this is not protected activity that would support a retaliation claim.  See, e.g., Cook v. CBS, Inc., 47 F. App'x 594, 596-97 (2d Cir. 2002).

Concepcion next asserts that the City's locking her out of the FMS computer program (i.e. requiring her to change her password) (Dkt. No. 60-4: Concepcion Opp. Br. Exs. at 43-44) and "harassment" her about her time entry and documentation for medical leave (id. at 29, 35-36, 41) are additional forms of retaliation.  These difficulties do not rise to the level of adverse employment actions, and accordingly cannot form the basis for a retaliation claim.  See, e.g., Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004) ("To be materially adverse, a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"); Nicastro v. Runyon, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) ("[M]any of the actions complained of by plaintiff, such as scrutiny from his supervisors that he deemed excessive [and] requiring documentation for sick leave . . . do not constitute 'adverse employment actions.'"); see also cases cited at page 21 above.  For the same reason, any retaliation claim based on the City's failure to provide Concepcion with employment evaluations also must fail.  (See page 21 n.16 above.)

Concepcion asserts that denying her overtime, training, promotions, a disability parking permit and reasonable accommodations are additional forms of retaliation, presumably for filing her June 2014 EEO complaint.  (Dkt. No. 60-1: Concepcion Dep. at 115; Dkt. No. 56: Murrell Aff. Ex. G at 7.)  The City has presented legitimate reasons to explain why Concepcion has not received overtime hours, a promotion or a disability parking permit (see pages 25, 27, 34-35 above),

and Concepcion offers no evidence to demonstrate that the proffered reasons are pretext for retaliation.  Further, as set forth above (see pages 31-33 above), the City has provided Concepcion with reasonable accommodations.

As far as the lack of training is concerned, Concepcion has set forth no evidence that would allow a reasonable juror to conclude that she was denied training because of her EEO or EEOC complaints.  Concepcion alleges that the City first began denying her training in 2011. (Concepcion Dep at 144.)  There is no inference of causation where the alleged adverse actions occur prior to the protected activity.  See, e.g., Cook v. CBS, Inc., 47 F. App'x at 597.

Concepcion asserts that a March 24, 2015 fine imposed for her failure to timely report a June 19, 2013 arrest to the DOT (see Murrell Aff. Ex. H at 7: 3/24/15 Agm't of Penalty) also was retaliatory (Concepcion Dep. at 149).  The DOT code of conduct requires employees to report arrests within two business days of their release from police custody.  (See Murrell Aff. Ex. H: Caraway Aff. ¶ 3; see also Caraway Aff. at 5: DOT Code of Conduct ¶ 10.)  Although Concepcion was arrested on June 19, 2013, the City asserts that she did not report her arrest until June 27, 2013, beyond the two day period prescribed by the DOT rules.  (Caraway Aff. ¶ 3.)  While Concepcion now asserts that she "called in to speak to Eric or John at [her] Advocate['s] office" (Dkt. No. 60-8: Concepcion Opp. Br. Exs. at 4), she signed an agreement on March 24, 2015 acknowledging that she did not timely report her arrest (Murrell Aff. Ex. H at 7).  The City further asserts that a $100 fine is typical of the penalty sought "for a first time violation for the failure to report an arrest." (Caraway Aff. ¶ 5.)  An employer's reasonable enforcement of a preexisting disciplinary policy does not constitute an adverse employment action.  See, e.g., Sesay-Harrell v. NYC Dep't of Homeless Servs., 12 Civ. 925, 2013 WL 6244158 at *15 (S.D.N.Y. Dec. 2, 2013); Martin v. Nat'l R.R. Passenger Corp., 10 Civ. 4199, 2012 WL 1129360 at *10 (S.D.N.Y. Mar. 30, 2012) ("'the terms and

conditions of employment ordinarily include the possibility that an employee will be subject to an employer's disciplinary policies in appropriate circumstances'" (quoting Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir. 2006))).   Accordingly, Concepcion cannot establish a prima facie case of retaliation as to the fine imposed for her failure to timely report her arrest.

Concepcion similarly asserts that the "agency reported to Advocate office various unjust complaints, tried numerous times to terminate [her]."  (Dkt. No. 26: SAC at 2.)  Concepcion's own submissions are replete with examples of occasions on which she was reprimanded by her supervisor.  (See, e.g., Dkt. No. 60-4: Concepcion Opp. Br. Exs. at 20 (8/15/12 reprimand for failure to follow time sheet protocol); Dkt. No. 60-5 at 4 (10/3/13 reprimand for "perpetual lateness"); id. at 9 (8/7/13 reprimand for "harsh and unprofessional verbal insult").)  Concepcion asserts that this "work place harassment and retaliation" (Dkt. No. 60-4: Concepcion Opp. Br. Exs. at 26) is due to the fact that she signed her 2013 performance evaluation "in protest" (see page 7 above).  Signing an evaluation "in protest" is not a protected activity.  Moreover, at least one of the reprimands predates her 2013 evaluation, thereby eliminating any causal connection. See, e.g., Baez v. New York, No. 14-3984, --- F. App'x ----, 2015 WL 6642971 at *2 (2d Cir. Nov. 2, 2015) ("the fact that the allegedly retaliatory course of conduct began long before she filed her 2009 lawsuit undercuts any inference of a causal connection between the two"); Cook v. CBS, Inc., 47 F. App'x at 597; Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir.) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."), cert. denied, 534 U.S. 951, 122 S. Ct. 348 (2001).

Finally, Concepcion asserts that as of December 31, 2015, all of her tasks were taken away from her.  (Dkt. No. 60: Concepcion Opp. Br. at 4.)  While "significantly diminished material

responsibilities" may constitute an adverse employment action, see Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000), Concepcion's bare allegation is insufficient to support her claim, let alone establish that her tasks were taken away in retaliation.

Accordingly, the City is granted summary judgment as to Concepcion's retaliation claims under Title VII, the ADA, the ADEA and the NYSHRL.

## V.    THE COURT DECLINES TO EXERCISE JURISDICTION OVER CONCEPCION'S NYCHRL CLAIMS

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine–judicial economy, convenience, fairness, and comity–will point toward declining to exercise jurisdiction over the remaining state-law claims." Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 727 (2d Cir. 2013) (citation & quotations omitted).  "Courts in this District tend to retain jurisdiction over NYSHRL claims when deciding federal discrimination claims on the merits, because the substantive standards for liability under the NYSHRL and federal discrimination claims are coextensive." Otegbade v. N.Y.C. Admin. for Children Servs., 12 Civ. 6298, 2015 WL 851631 at *4 n.8 (S.D.N.Y. Feb. 27, 2015).  Alternatively, "[t]he NYCHRL prohibits a broader range of discriminatory and retaliatory conduct than its state and federal analogues," and New York State courts are more familiar with its application.  Landoldfi v. Am. Ass'n of Retired Persons, 13 Civ. 7333, 2015 WL 5820710 at *9 (S.D.N.Y. Sept. 28, 2015); see, e.g., Guzman v. City of N.Y., 93 F. Supp. 3d 248, 264-65 (S.D.N.Y. 2015); Vuona v. Merrill Lynch & Co., 919 F. Supp. 2d 359, 393-94 (S.D.N.Y. 2013); see also cases cited at page 14 n.8 above.  Given that Concepcion's federal law claims all have been dismissed, the Court declines to exercise supplemental jurisdiction over Concepcion's NYCHRL claims.

43

## **CONCLUSION**

For the reasons set forth above, the City's summary judgment motion is <u>GRANTED</u> with respect to Concepcion's Title VII, ADA, ADEA and NYSHRL discrimination and retaliation claims, as well as her ADA and NYSHRL failure-to-accommodate claims. The Court declines to exercise supplemental jurisdiction over Concepcion's NYCHRL claims, which are dismissed without prejudice. The Clerk of Court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated:      New York, New York
            January 29, 2016

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies to:      Counsel (ECF)
                Tina Concepcion (mail)